IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

WILLIE C. MCMILLIAN                                                                                     PLAINTIFF

V.                                                                          CIVIL ACTION NO. 4:20-CV-00130-DAS

MISSISSIPPI DEPARTMENT OF CORRECTIONS,
PELICIA HALL, and AUDREY MCAFFE                                                              DEFENDANTS

MEMORANDUM OPINION AND ORDER

Plaintiff Willie C. McMillian, proceeding *pro se* and *in forma pauperis*, filed suit under 42 U.S.C. § 1983 against Mississippi Department of Corrections ("MDOC"), Pelicia Hall, and Audrey McAffe, alleging that the conditions of his confinement violated his Eighth Amendment right to be free from cruel and unusual punishment. Defendants have moved for summary judgment. McMillian failed to file a response, and the matter is now ripe for resolution. Having reviewed the submissions and arguments of the parties, as well as the applicable law, the Court finds that Defendants' motion should be granted.[1]

Plaintiff's Allegations and Background Facts

McMillian is an MDOC inmate, formerly housed in Unit 29, I-Building, at the Mississippi State Penitentiary ("MSP") located in Parchman, Mississippi, at all times pertinent to the instant action. McMillian asserts that he was subjected to unconstitutional conditions of confinement during his stay at MSP from about April 15, 2018, until December 15, 2019.[2] In particular, McMillian alleges that he was exposed to standing water in his cell, loss of power for hours at a time, late delivery of meals which were often cold and contained rocks and bugs,

---

[1] As McMillian consented to United States Magistrate Judge jurisdiction in this case in accordance with 28 U.S.C. § 636 (c), the undersigned has the authority to enter this order and the accompanying judgment.
[2] McMillian's institutional records show that he was housed in Unit 29-I from May 1, 2019, until December 2, 2019. *See* Doc. # 23-1.

roaches and rats, delay of medical care, inmate on inmate violence, corruption by officers, and a lack of shower/yard/gym calls for long periods of time. According to McMillian, food served at MSP caused his feet to swell and he further suffered unidentified "health and skin problem[s]."

McMillian filed the instant action on July 21, 2020, alleging that MDOC, former Commissioner Pelicia Hall, and Deputy Administrator Audrey McAffe are responsible for the alleged unconstitutional conditions of confinement. He asks the Court for injunctive relief only, specifically that Unit 29 and MSP be shut down entirely. On May 4, 2021, Defendants filed a motion for summary judgment. McMillian failed to respond to the motion, and the time for doing so has passed.

## Summary Judgment Standard

Summary judgment is appropriate only when the pleadings and evidence, viewed in the light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (citation and internal quotation mark omitted). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. Of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)).

Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate. *Morris v. Covan World Wide Moving, Inc.*, 144

F.3d 377, 380 (5th Cir. 1998); *see also Celotex*, 477 U.S. at 323. In other words, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Beck*, 204 F.3d at 633. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73(1990), "unsubstantiated assertions," *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994). If no proof is presented, however, the Court does not assume that the non-movant "could or would prove the necessary facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## Discussion

McMillian claims that the conditions of his confinement at MSP violated the Eighth Amendment's prohibition against cruel and unusual punishment. McMillian's claim, however, fails for a multitude of reasons. First, McMillian has not demonstrated that Defendants Hall or McAffe had any personal involvement in the alleged constitutional violations. Moreover, Defendants cannot be sued in their official capacity under Section 1983, nor can McMillian show an ongoing constitutional violation that would warrant prospective relief. Additionally, McMillian failed to fully exhaust his administrative remedies prior to filing this action. Lastly, McMillian's transfer to another correctional facility seemingly renders his claim for injunctive relief moot.

*Supervisor Liability*

A plaintiff proceeding under 42 U.S.C. § 1983 cannot establish that a government official violated the plaintiff's constitutional rights simply by virtue of the official's role as a supervisor.

*Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). Instead, to state a viable claim under § 1983, the plaintiff must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozana v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). There are only two scenarios in which a supervisor may be held liable under § 1983: (1) when he affirmatively participates in the incident, or (2) when he implements an unconstitutional policy that results in the constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Consequently, a supervisory official "can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

In this case, McMillian alleges no facts, nor has he produced any evidence, demonstrating any personal involvement by Hall or McAffe in the alleged unconstitutional conditions. Instead, McMillian merely mentions Hall briefly in his complaint, averring that some unidentified inmates wrote to her about the conditions, and makes no mention of McAffe whatsoever. Moreover, McMillian failed to present any evidence of an unconstitutional policy implemented by Hall or McAffe which resulted in injury. In fact, he has not asserted the existence of any unconstitutional policy. Consequently, McMillian's claims against Hall and McAffe fail as a matter of law.

*Eleventh Amendment Immunity*

The Eleventh Amendment provides, in pertinent part, that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. CONST. amend. XI. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Board of Trustees of University of Alabama v.*

*Garrett*, 531 U.S. 356, 363 (2001). Congress did not abrogate Eleventh Amendment immunity in enacting Section 1983, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), nor has Mississippi waived its right to sovereign immunity. *See* Miss. Code Ann § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment.")

Sovereign immunity further extends to protect any state agency when that agency is "an arm of the state," and state officers acting in their official capacities. *See McCarthy v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004); *Daigle v. Gulf State Utilities Co., Local Union Number 2286, et al.*, 794 F.2d 974, 980 (5th Cir. 1986). It is well-established that MDOC is an arm of the State of Mississippi and cloaked with Eleventh Amendment immunity from suit. *See Towns v. Miss. Dept. of Corr.*, 2020 WL 1249904 (N.D. Miss. Mar. 16, 2020); *Williams v. Miss. Dept. of Corr.*, 2012 WL 2052101, at *1-2 (S.D. Miss. June 6, 2012); *Dandridge v. Miss.*, 2009 WL 4940105, at *7 (S.D. Miss. Dec. 14, 2009). Likewise, former Commissioner Hall and Deputy Administrator McAffe, in their official capacities, are also "arms of the state" for purposes of Eleventh Amendment immunity. *Jones v. Tyson Foods, Inc.*, 971 F. Supp. 2d 671, 677 (N.D. Miss. 2013).

Consequently, Defendants are not amenable to suit for claims brought under Section 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989), with the exception of state officials sued for prospective relief. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908). For the *Young* exception to be applicable, however, the plaintiff must demonstrate an ongoing constitutional violation, not simply that a violation has been committed. *See Green v. Mansour*, 474 U.S. 64, 71-73 (1985). Additionally, the plaintiff must assert his claims against the state official responsible for enforcing the law at issue in that person's official capacity. *See Walker v. Livingston*, 381 F. App'x 477, 478 (5th Cir. 2010)(citation omitted).

5

By way of prospective relief, McMillian requests that MSP be shut down. McMillian, however, has failed to show any constitutional violation *committed* by Defendants Hall or McAffe, ongoing or otherwise. Moreover, McMillian's request for prospective relief is now effectively moot due to his transfer from MSP to another correctional facility. As such, McMillian has failed to demonstrate the applicability of the *Young* exception in this case, and his claim against all Defendants, in their official capacities, must be dismissed as barred by the doctrine of sovereign immunity.

*Exhaustion of Administrative Remedies*

Because McMillian was incarcerated when he filed this action, the Prison Litigation Reform Act ("PLRA") applies to this case. *See* 28 U.S.C. § 1915A. The PLRA provides, in pertinent part, as follows:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e (a).

The PLRA's exhaustion requirement is mandatory. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Porter v. Nussle*, 534 U.S.516, 524 (2002). The Fifth Circuit takes a "strict approach" to exhaustion, holding that "[d]istrict courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012); *see also Days v. Johnson*¸322 F.3d 863, 866 (5th Cir. 2003). Moreover, prisoners must properly exhaust their administrative remedies before filing suit, which "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can

function affectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S.81, 90-91 (2006).

MDOC has been granted the statutory authority to adopt an administrative review procedure at each of its correctional facilities. Pursuant to this authority, it has established an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a complaint or grievance relating to any aspect of his incarceration. *See* Miss. Code Ann. § 47-5-801.[3] The ARP process is a two-step process that begins when an inmate first submits his grievance in writing to the prison's legal claims adjudicator within thirty (30) days of the complained of incident. *Howard v. Epps*, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The adjudicator, utilizing certain criteria, screens the grievance and determines whether to accept it into the ARP process. *Id.*

If accepted, the grievance is forwarded to the appropriate official who then issues a First Step Response to the complaining inmate. *Id.* If the inmate is unsatisfied with the first response, he may continue to the Second Step by completing an appropriate ARP form and sending it to the legal claims adjudicator. *Id.* The Superintendent, Warden or Community Corrections Director will then issue a final ruling, or Second Step Response. *Id.* Importantly, "[i]ssuance of a Second Step Response is the *only* way to complete the grievance process." *Harris v. Turner*, 2021 WL 1565790 (N.D. Miss. Apr. 21, 2021) (emphasis added). If the inmate is unsatisfied with the second response, he may then file suit in state or federal court. *Id.*

In his complaint, McMillian asserts that his grievances were never reviewed by the ARP program. *See* Doc. # , p. 3-4. McMillian's institutional records, however,

---

[3] This program has been approved by this Court in *Gates v. Collier*, GC 71-6-5-S-D (N.D. Miss. 1971) (order dated Feb. 15, 1994).

indicate that he filed two grievances on May 17, 2019, concerning the conditions of his confinement in Unit 29. *See* Doc. # 23-2, pp. 3,6. These grievances were rejected on May 22, 2019, and June 3, 2019, respectively, because McMillian requested "emergency review," and Richard Pennington, ARP Director, found his allegations failed to meet MDOC's emergency review criteria. *See* Doc. # 23-2, pp. 2,5. McMillian was given the option of re-submitting his grievances as regular (non-emergency) ones within five (5) days from the date of the letters rejecting his requests for emergency review. *See id.* McMillian, however, failed to re-submit his grievances.[4] Consequently, he never received a First Step Response and certainly not a Second Step Response. In sum, the competent evidence before the Court shows that McMillian failed to properly exhaust his administrative remedies prior to filing this action.

*Transfer Renders Claims Moot*

McMillian complains about the conditions of his confinement at MSP and seeks injunctive relief only, namely that MSP be shut down. McMillian, however, was transferred from MSP more than a year ago, *See* Doc. # 23-2, p. 10, and is now housed at the Holmes-Humphreys County/Regional Correctional Facility located in Lexington, Mississippi. *See* Doc. # 22. Ordinarily, a prisoner's transfer to another facility "render[s] his claims for declaratory and injunctive relief moot." *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001). To establish that his claims are not moot, McMillian "must show either a 'demonstrated probability' or a 'reasonable expectation' that he w[ill] be transferred back to [MSP]." *Oliver v. Scott*, 276 F.3d 736, 741 (2002) (citations omitted).

---

[4] The Court notes that months later, on September 8, 2019, McMillian submitted a regular grievance requesting a job assignment and transfer from MSP. *See* Doc. # 23-2, p. 9. A First Response was issued indicating that McMillian's ARP was accepted and satisfied as both requests were granted. *See* Doc. # 23-2. p. 10.

McMillian has not alleged, much less proven, that it is probable nor that there is a reasonable expectation that he will be transferred back to MSP. *See Herman*, 238 F.3d at 665 ("relief based on the possibility of transfer back . . . is too speculative to warrant relief"). Thus, McMillian has failed to show that his claims for injunctive relief are "capable of repetition yet evading review," *see Hardwick v. Brinson*, 523 F.2d 798, 800 (5th Cir. 1975), and such claims are, therefore, moot.

## Conclusion

Based on the foregoing discussion, the Court finds that the evidence set forth in this case does not support McMillian's claims for unconstitutional conditions of confinement. Accordingly, Defendants' motion for summary judgment [23] is **GRANTED**, and judgment will be entered in their favor. A separate final judgment in accordance with this Memorandum Opinion and Order will issue today.

**SO ORDERED**, this the 16th day of June, 2021.

/s/ David A. Sanders
**DAVID A. SANDERS**